IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLOUDERA, INC.,

　　　　　Plaintiff,

v.

DATABRICKS, INC., RICHARD
DOVERSPIKE

　　　　　Defendants.

Civil Action No.

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Cloudera, Inc. ("Cloudera") respectfully submits its Complaint against Defendants Databricks, Inc. ("Databricks") and Richard Doverspike ("Doverspike") (the defendants are collectively referred to herein as "the Defendants") as follows:

### INTRODUCTION

This case arises out of Defendants' unlawful competition with Cloudera. Doverspike, a former employee of Cloudera, has breached the Proprietary Information and Inventions Agreement & Non-Compete Agreement he signed as a condition of his employment with Cloudera, has misappropriated trade secrets of Cloudera and has engaged in conduct in violation of the federal Computer Fraud and

Abuse Act (CFAA) and the Georgia Computer Systems Protection Act. Databricks has tortiously interfered with Cloudera's agreements with Doverspike and other former Cloudera employees and has engaged in trade secret misappropriation and violation of the CFAA.

## THE PARTIES

1.

Plaintiff Cloudera is a Delaware corporation with its principal place of business at 395 Page Mill Rd, Palo Alto, CA 94306.

2.

Cloudera previously merged with Hortonworks, Inc. ("Hortonworks") and was assigned Hortonworks's employee agreements as a result of that transaction.

3.

Defendant Databricks is a Delaware corporation with its principal place of business at 160 Spear St 13th Floor, San Francisco, CA 94105.

4.

Defendant Richard Doverspike is an individual domiciled in Atlanta, Georgia, who was employed by Cloudera until December 1, 2020.

## JURISDICTION AND VENUE

5.

This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

6.

The Court has federal question jurisdiction because Cloudera asserts claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C § 1836, et seq. and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. against Defendants.

7.

The Court has supplemental jurisdiction over all claims for which the Court lacks original jurisdiction because Cloudera's claims arise out of the same common nucleus of operative facts, namely, Doverspike's improper and illegal actions immediately before and after his separation from Cloudera and Databricks' illegal actions toward Cloudera and tortious interference with Cloudera's agreements with its current and former employees.

8.

This Court has personal jurisdiction over Defendant Databricks because, on information and belief, Databricks employs multiple employees in the state of Georgia, including, specifically, Defendant Doverspike, and has caused harm and

injury to Cloudera in Georgia, including by intentionally interfering with the employment contracts of current and former Cloudera employees who are based in Georgia.

9.

In addition, on information and belief, Databricks regularly sells and offers to sell its products and services into the state of Georgia, including through Doverspike.

10.

This Court has general personal jurisdiction over Doverspike because he resides in Atlanta, Georgia and has caused harm and injury to Cloudera in Georgia by breaching his contractual obligations to Cloudera while in Atlanta, Georgia and by causing harm and injury to Cloudera while in Georgia, including by misappropriating Cloudera trade secret information and exceeding his authority to access Cloudera information and systems.

11.

Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action took place in this District and Division and the harm and injury to Cloudera is felt in this District.

## FACTUAL BACKGROUND

### Cloudera's Business

12.

Cloudera is a software company that provides a software platform for data engineering, data warehousing, machine learning and analytics that runs in the cloud or on the customer's premises.

13.

Cloudera serves a wide range of customers including financial service, healthcare, digital media, advertising, networking and telephony enterprises.

14.

Cloudera's sales employees, like Doverspike, receive substantial training; confidential strategy, customer, and competitive information; business contacts; proprietary account leads and information on account status and customer account needs; confidential information on product strategy and product development; confidential and proprietary information about staffing and employee resources within Cloudera; and other advantages that provide Cloudera with a competitive advantage in the marketplace, by virtue of not being generally known outside of Cloudera and/or by having been developed due to the investment of substantial Cloudera man hours and financial resources.

15.

This confidential information of competitive value includes, but is not limited to, access to valuable confidential, proprietary, and trade secret information about Cloudera's business practices, strategies, product development, market approach, employment resources, customers, and market plans.

16.

Cloudera[1] invests substantial time and resources to protecting its confidential, proprietary, and trade secret information and prevents such information from being shared publicly, either intentionally or by accident, through a variety of processes and procedures.

17.

These processes and procedures include:  (i) employment and non-compete agreements that include prohibitions against disclosing, using, or maintaining Cloudera proprietary, confidential, or trade secret information outside of Cloudera without express permission or without ensuring appropriate restrictions are in place (such as non-disclosure agreements); (ii) limiting employee access to certain sensitive, confidential, and/or trade secret information to a "need to know" basis;

---

[1] For convenience, "Cloudera" as used herein generally refers to the practices of both Cloudera and Hortonworks unless otherwise specified.

(iii) requiring use of VPNs for employees' remote access to Cloudera's computer systems; (iv) labeling/marking confidential, proprietary, and/or trade secret information as such; (v) physical security at Cloudera facilities and cybersecurity for Cloudera systems, devices, and accounts (including passwords and encryption); (vi) routine training about and posting of confidentiality/trade secret policies and procedures; and (vii) requiring employees to return all Cloudera property, including all confidential, proprietary and trade secret information and documents, upon termination of employment.

18.

In addition, certain Cloudera employees who have particularly sensitive roles (e.g., those in management, sales, engineering, or product development) are required to agree to non-competition agreements that reasonably restrict employment with direct competitors, the solicitation of certain client/prospective client accounts, and the solicitation of former colleagues for employment under certain enumerated circumstances for up to 12 months post-separation.

### Doverspike's Employment with Cloudera

### Doverspike's Hiring and Job History at Cloudera

19.

Doverspike began employment as Inside Sales Representative at Cloudera's

predecessor-in-interest, Hortonworks, in January 2016 and maintained that role through June 2016.

20.

In July 2016, Doverspike became an Enterprise Account Executive at Hortonworks, focusing on "mid-enterprise" accounts in the Southeast region of the U.S., including in Georgia and Florida.

21.

Following the Hortonworks/Cloudera merger, in January 2019, Doverspike became a Cloudera Enterprise Account Executive with responsibility for accounts in the Southeast region of the U.S., including in Georgia and Florida, a role he maintained until his resignation on November 30, 2020.

22.

Doverspike was also a Field Ambassador for Cloudera's Data Warehousing product from February 2019 through March 2020.

23.

Doverspike's duties as a Cloudera Enterprise Account Representative included development of client account relationships for current and prospective customer accounts in order to sell Cloudera products and services to those accounts.

24.

Doverspike's other responsibilities included, among other things, growing accounts, interfacing with customer contacts, managing customer needs, identifying scalable upsell opportunities, and working with Solution Engineers to develop and propose solutions customized for his assigned accounts.

25.

The process for identifying, developing and eventually converting prospects into customers, as well as expanding existing accounts, at Cloudera requires substantial investment and training, which Doverspike benefitted from learning.

26.

As part of the ordinary course of his duties in sales, Doverspike had access to Cloudera confidential, proprietary, and trade secret sales information, including information about customer accounts, customer account status and notes, customer contracts, sales strategies and operational details, product roadmaps and strategic product plans, marketing strategies, and business organizational and strategy information.

27.

Doverspike also had access to sensitive trade secret information regarding Cloudera's customer accounts through Cloudera's Salesforce Customer Relations

Management database hub in which Doverspike and other Cloudera employees entered detailed competitive sales and account development information about actual and prospective customers.

28.

In the regular course of his sales duties, Doverspike also participated and had access to confidential and trade secret Cloudera information discussed and shared in regular team meetings during which confidential and trade secret strategy, customer account, and business information about accounts in the entire sales region, including Southeast region of the U.S., including in Georgia and Florida, was shared.

29.

In addition to the information available to Doverspike in his sales role, he also had confidential, proprietary, and trade secret Cloudera information available to him as a result of his role as a Field Ambassador for Cloudera's Data Warehousing product.

30.

Here, too, Doverspike had regular access to confidential, proprietary, and trade secret Cloudera business plans, strategies, product development, competitive intelligence, market insight, and other business intelligence.

31.

The confidential and competitive business information and trade secrets to which Doverspike had access throughout his employment with Hortonworks and Cloudera is critical to Cloudera's competitive position in the industry and would be of substantial value to a competitor such as Databricks.

**Doverspike's Agreements to Protect Cloudera Confidential, Proprietary, and Trade Secret Information and to Refrain from Unfairly Competing with Cloudera**

32.

As consideration for his employment, Doverspike acknowledged, agreed to and executed an Offer of Employment (the "Offer Letter"), which included a separate Proprietary Information and Inventions Agreement & Non-Compete Agreement ("PIIA").

33.

The PIIA contains the following restrictive covenants: non-competition, non-solicitation of employees, non-solicitation of customers, and non-solicitation of suppliers, each of which was narrowly defined and limited to a 12-month term and are otherwise subject to specified terms that limit and circumscribe the restrictive covenants in a reasonable manner to ensure that the employee is not unduly burdened.

34.

Pursuant to paragraph 9 of the PIIA, the PIIA is "fully assignable and transferrable by [Hortonworks]" and, as alleged *supra,* was, in fact, assigned to Cloudera following its merger with Hortonworks.

35.

The Offer Letter attaches a separate Proprietary Information and Non-Compete Agreement. The offer letter states, "Like all Company employees, you will be required, as a condition of your employment with the Company, to sign the Company's standard Proprietary Information and Inventions Agreement & Non-Compete Agreement" – the PIIA – attached to the Offer Letter.

36.

Paragraph 5 of the PIIA contains a non-solicitation provision, providing:

> (b) I will not (in person or through assistance to others) knowingly participate in soliciting or communicating with any customer of [Cloudera] in pursuit of a Competing Line of Business [defined as "a business that involves a product or service that would replace or compete with any product or service offered or to be offered by Company"] if I either had business-related contact with that customer or received Proprietary Information about that customer in up to the last two years of my employment at [Cloudera];

37.

Paragraph 5(c) of the PIIA provides:

I will not knowingly participate in soliciting or communicating with any [Cloudera] Employee for the purpose of persuading or helping the [Cloudera] Employee to end or reduce his or her employment with [Cloudera] if I either worked with that [Cloudera] Employee or received Proprietary Information about that [Cloudera] Employee in up to the last two years of my employment with [Cloudera].

38.

Paragraph 5(d) of the PIIA provides:

I will not knowingly participate in soliciting or communicating with a [Cloudera] Supplier for the purpose of persuading or helping the [Cloudera] Supplier to end or modify to Company's detriment an existing business relationship with [Cloudera] if I either worked with that [Cloudera] Supplier or received Proprietary Information about that [Cloudera] Supplier in up to the last two years of my employment with [Cloudera].

39.

Paragraph 4 of the PIIA defines "Proprietary Information" as

Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that related to [Cloudera] or the business or demonstrably anticipated business of [Cloudera] or that are received by or for [Cloudera] in confidence.

40.

The PIIA contains a non-disclosure clause, providing in Paragraph 4 that Doverspike "will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information…Upon termination of my employment, I will promptly return to [Cloudera] all items containing or embodying Proprietary Information (including all copies)."

41.

The PIIA includes a choice of law provision for the State of Delaware in Paragraph 9.

42.

Doverspike acknowledged in the PIIA that the restrictive covenants therein are reasonable and necessary to protect Cloudera's legitimate business interests.

43.

Doverspike agreed, in signing the PIIA (per paragraph 9) that in the event he breached the PIIA, Cloudera would suffer irreparable harm and would therefore be entitled to injunctive relief and any other remedies to enforce the PIAA.

44.

Cloudera has legitimate business interests that are necessary to protect through the PIIA, including the protection of its valuable confidential information and trade secrets, its customer goodwill, as well as its substantial relationships with specific prospective or existing customers or clients.

**Doverspike's Resignation from Cloudera**

45.

Doverspike informed his manager, Mike Kaleta, late in the workday on November 30, 2020, that he was resigning from his employment at Cloudera to join

its direct competitor, Databricks, in substantially the same role.

46.

Doverspike further stated that he was joining Databricks to work with another former Cloudera employee, John Nieters, who had left Cloudera in February 2020 and joined Databricks in March 2020 and that there were other former Cloudera/Hortonworks employees he knew at Databricks as well.

47.

On information and belief, Nieters, acting in his capacity as a Databricks employee, recruited Doverspike to Databricks in violation of Nieter's PIIA and Separation Agreement with Cloudera.

48.

Doverspike offered two weeks' notice with his November 30 resignation but Kaleta informed him that he would immediately be restricted from further work, including accessing his Cloudera-issued laptop and Cloudera's applications and services, since he was going to work for a competitor.

49.

Although Doverspike was not allowed to continue to perform his employee duties at Cloudera, Cloudera continued to compensate Doverspike through December 11, 2020, i.e., through Doverspike's proffered notice period.

50.

Doverspike's access to his Cloudera-issued laptop and to Cloudera's systems was disabled on the morning of December 1, 2020.

51.

Forensic analysis shows that between October 2020 and through November 30, 2020, when Doverspike resigned, he repeatedly emailed Cloudera confidential, proprietary, and trade secret information (including document attachments) to his personal email account.

52.

In addition, forensic analysis shows that Doverspike plugged a USB drive into his Cloudera computer on November 30, 2020 (the day he resigned) and evidence suggests he copied files from his Cloudera computer to a USB drive on that same date.

53.

Forensic analysis also shows that Doverspike used his Cloudera-issued computer to access websites to prepare for a job interview at Databricks and also used his Cloudera-issued computer to access Cloudera accounts and systems to review and download confidential, proprietary, and trade secret information from Cloudera's Google Drive and Cloudera's Highspot platform.

54.

Doverspike lacked authority for and did not have a legitimate business reason for copying, accessing, or forwarding any of the documents or emails that he sent to his personal account or for accessing and using the documents that he downloaded and/or viewed at Cloudera's Google Drive and Highspot platform; Doverspike likewise lacked authority or a legitimate business reason for copying information to that USB drive on or around that date.

55.

The documents Doverspike accessed, copied, viewed, used, and misappropriated contain, among other things, information about current and prospective customer accounts, anticipated, actual, and historical customer account revenue, employee performance metrics and operational information, competitive intelligence about the status of customer accounts, including notes about use cases, problems at and strategies used with those accounts, and account contacts and decisions makers, sales/revenue forecasts, account renewals, sales manuals and training materials, business strategy, product development, market trends, and geographical region sales opportunities.

56.

As an example of the information that Doverspike improperly accessed,

copied, and, on information and belief, used in the course of securing a job at Databricks and working at Databricks, on October 27, 2020, Doverspike accessed, downloaded, and emailed himself a file entitled "Ricky's FY21 Accounts" from Cloudera's Google Drive.

57.

The "Ricky's FY21 Accounts" file is a spreadsheet that contains detailed and contemporaneous confidential and trade secret customer account information, including, e.g., customer account and contact information, prospective business opportunities, and the status of pending deals and potential renewals of Cloudera customer accounts.

58.

The information in this document would be of substantial value to Doverspike in his new role at Databricks, where, on information and belief, he is responsible for accounts in the same geographic region as he was responsible for at Cloudera, including, on information and belief, at least some of the same accounts he had at Cloudera.

59.

On October 27, 2020 Doverspike also forwarded to his personal Gmail account a document titled "Opportunity Process doc.x." This document contains

several different sections, including a section entitled "ATL Accounts: All enterprise accounts," in which Doverspike identifies six current client accounts that he was responsible for at Cloudera.

60.

This client account information is proprietary and a trade secret because it is not publicly known, and Cloudera takes active steps to protect the names of its enterprise account actual and prospective customer accounts and the key data concerning those accounts.

61.

In October 2020, Doverspike sent several PowerPoint presentations from his Cloudera email account to his personal Gmail account.

62.

These PowerPoint presentations, among other things, contain confidential, proprietary and trade secret information about Cloudera's internal processes for the data warehouse product and the reasoning behind them, enabling those competitors to emulate Cloudera's strategies with respect to their data warehouses and associated resources, or otherwise use those strategies to Cloudera's detriment.

63.

Doverspike did not return any of the Cloudera confidential, proprietary, and

trade secret information that he copied and forwarded to himself, in October and November 2020, upon the termination of his employment with Cloudera even though Doverspike expressly agreed to return all Cloudera property and confidential information in the Offer Letter and PIIA.

64.

Cloudera has expended time and money in excess of $5,000 in performing forensic analysis of Doverspike's accounts and Cloudera-issued computer in order to determine that Doverspike accessed Cloudera accounts and systems in excess of his authority and without a legitimate business purpose.

65.

The documents and information Doverspike improperly took and maintained from Cloudera derive independent economic value from not being generally known to, and not readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

66.

This information would give a Cloudera competitor a substantial competitive advantage because it contains, e.g., Cloudera's confidential and trade secret business strategies, product information and plans, customer account and renewal information, and customer lists.

67.

Cloudera invests significant time, money, and resources to develop, maintain, and protect the confidential, proprietary, and trade secret information that Doverspike improperly forwarded, copied, and maintained in excess of his authority in and around October and November 2020.

68.

The advantages that Cloudera develops by virtue of investing in, developing, and protecting its confidential, proprietary, and trade secret information could easily evaporate if this information falls into the hands of a competitor.

69.

On information and belief, Doverspike is currently in unlawful possession of Cloudera confidential, proprietary, and trade secret information and, on information and belief, has used and is unlawfully using this information in his current role as an employee at Databricks and for the benefit of Databricks.

### Databricks' Competition with Cloudera
### Databricks is a Cloudera Competitor

70.

Databricks offers customers a cloud-based analytics platform for processing and transforming massive quantities of data and exploring the data through machine learning models.

71.

Cloudera and Databricks engage in direct competition to sell their products and services to customers worldwide, including in the Southeastern United States.

**John Nieters**

72.

John Nieters ("Nieters") joined Hortonworks on or around September 2, 2016 as a Regional Sales Director for the Central U.S.  and executed an Offer Letter and PIIA upon joining Hortonworks.

73.

Nieters' employment agreements were assigned to Cloudera after the merger with Hortonworks.

74.

Nieters separated from Cloudera in February 2020 and joined Databricks as Regional Sales Director for the Central U.S. in or about March 2020.

75.

The Nieters PIIA contains the same restrictive covenants and agreement to return all Cloudera confidential, proprietary, and trade secret information as in the Doverspike PIIA.

76.

The Nieters' PIIA agreement also includes a choice of law provision for the State of Delaware.

77.

Upon his departure, Nieters signed a Confidential Separation Agreement and General Release ("Separation Agreement") on February 10, 2020, which contains non-competition and non-solicitation provisions at Paragraph 11.

78.

In consideration of the separation from Cloudera and the provisions of the Separation Agreement, Nieters confirmed that acceptance of employment with a Cloudera competitor could lead to unauthorized disclosure or use of trade secrets or confidential information.

79.

Paragraph 11(b) of the Separation Agreement prohibits Nieters from soliciting any prospective customers, clients, or accounts of Cloudera.

80.

Paragraph 11(c) of the Separation Agreement prohibits Nieters from soliciting any Cloudera employees within 12 months of the separation date.

81.

In Paragraph 12 of the Separation Agreement, Nieters agreed to refrain from any tortious interference with Cloudera contracts or relationships of Cloudera and its employees and current and prospective customers.

82.

Nieters confirmed in Paragraph 2 of the Separation Agreement that his PIIA remained in "full force and effect" and averred that he had returned all Company property and information before his separation date.

83.

Nieters did not return all Cloudera property or information before his separation date.

**Databricks' Scheme to Interfere with Cloudera's Business and Contractual Relations**

84.

On information and belief, Nieters joined Databricks in March 2020.

85.

Nieters is a Regional Sales Director at Databricks, the same title he held at Cloudera and Hortonworks and, on information and belief, he has the same material job responsibilities at Databricks as he had during his last two years at Cloudera.

86.

Nieters' recruitment of Doverspike and, on information and belief, other Cloudera employees on behalf of Databricks is contrary to Paragraph 5 of the Nieters' PIIA and Paragraph 11 of his Separation Agreement.

87.

Databricks has been aware since at least January 2019 that Cloudera's employment agreements for sales representatives typically include restrictive covenants, including an employee non-compete clause, a non-customer solicitation clause, a non-supplier solicitation clause, and a non-use of competitive information clause.

88.

On December 8, 2020 (prior to Doverspike starting at Databricks), Cloudera specifically notified Databricks of the Employment Agreements and PIIAs entered into by Doverspike and Nieters.

89.

Databricks was aware or reasonably should have been aware that it was a violation of the Nieters' PIIA and Separation Agreement for Nieters to recruit Doverspike to Cloudera.

90.

Databricks was aware or reasonably should have been aware that it was a violation of the Doverspike Offer Letter and PIIA for Doverspike to use and disclose Cloudera confidential, proprietary, and trade secret information to Databricks during the course of his interview process with Databricks and that it was further a violation of those same agreements for Doverspike to bring Cloudera confidential, proprietary, and trade secret information to Databricks in the course of Doverspike's employment at Databricks.

91.

Since at least 2018, Databricks has engaged in a practice of hiring Cloudera employees who retained confidential Cloudera documents and who continued to access and use Cloudera's confidential and trade secret information while working for Databricks.

92.

In late 2019, Databricks represented to Cloudera that it had adopted new hiring and onboarding practices that would identify those former Cloudera employees who had ongoing contractual obligations to Cloudera and ensure that Databricks would not act to interfere with Cloudera employment agreement obligations going forward.

93.

However, Databricks has continued to interfere with Cloudera employment contracts, including, recently with Doverspike's contracts.

94.

Databricks has recently resumed a targeted program of recruiting employees from Cloudera to Databricks, intentionally ignoring those employee's contractual obligations to Cloudera and in contravention of its 2019 representation that it had adopted processes that would ensure Cloudera would not continue to interfere with Cloudera contracts.

95.

Databricks is intentionally interfering with Cloudera's employment agreements with at least Doverspike and Nieters, by, among other things, on information and belief, using Nieters to recruit Doverspike to Databricks, and, on information and belief, allowing Nieters and Doverspike to contact former Cloudera accounts in violation of their agreements.

96.

On information and belief, Databricks also interfered with Clouderas employment contracts by soliciting, receiving, and using Cloudera confidential, proprietary, and trade secret information that had been misappropriated to

Databricks by one or more former Cloudera employees.

97.

Databricks' solicitation of Doverspike and Nieters and Doverspike's theft of Cloudera confidential, proprietary, and/or trade secret information is part of this broad pattern of unlawful conduct by Databricks, aimed at Cloudera and that is intended to harm Cloudera's business.

98.

Databricks used and is continuing to use Cloudera confidential, proprietary, and/or trade secret information to interfere with Cloudera's actual and prospective economic advantage.

99.

Cloudera faces damage to its reputation, customer base, and economic advantage as a result of Databricks' interference and misappropriation.

## COUNT I
### BREACH OF CONTRACT (Injunctive Relief and Damages)
*Against Defendant, Doverspike*

100.

Cloudera repeats and realleges each and every allegation set forth in paragraphs 1 through 99 as if fully set forth herein.

101.

Cloudera and Doverspike entered into the PIIA.

102.

The restrictive covenants in the PIIA are valid and enforceable.

103.

Cloudera has fully performed its obligations under the PIIA.

104.

Based on Doverspike's breach of his PIIA, and on information and belief, Cloudera reasonably believes that Doverspike intends to or is already breaching Paragraphs 5(b) (the customer non-solicitation) and Paragraph 4 (the non-disclosure obligations) in the PIIA in connection with his employment with Databricks.

105.

Cloudera is entitled to injunctive relief to enjoin further breaches.

106.

Doverspike's conduct has and will continue to result in irreparable harm to Cloudera.

107.

Cloudera will continue to suffer irreparable harm if an injunction does not issue.

108.

Cloudera is entitled to temporary, interlocutory, and permanent injunctive relief to enjoin Doverspike's unlawful conduct.

109.

Moreover, as a direct and proximate result of Doverspike's breaches of the PIIA, Cloudera will suffer damages.

110.

Cloudera is entitled to an award of any and all damages caused by Doverspike's breach of the PIIA in an amount to be determined and proven at trial.

111.

Doverspike has acted in bad faith, has been stubbornly litigious, and has caused Cloudera unnecessary trouble and expense such that Cloudera is entitled to an award of its attorneys' fees and costs of this litigation pursuant to O.C.G.A §13-6-11.

## COUNT II
## TORTIOUS INTEREFERENCE WITH CONTRACTUAL RELATIONS - DOVERSPIKE
*Against Defendant, Databricks*

112.

Cloudera repeats and realleges each and every allegation set forth in paragraphs 1 through 111 as if fully set forth herein.

113.

Cloudera has a valid contractual relationship with Doverspike.

114.

Despite its knowledge of the terms the competitive restrictions under the PIIA, Databricks induced Doverspike to breach his contract with Cloudera to gain access to Cloudera's confidential, proprietary, and trade secret information.

115.

In doing so, Databricks acted improperly and without privilege, and purposely and maliciously with the intent to injure.

116.

As a direct and proximate result of Databricks' actions, Cloudera has suffered financial injury in an amount to be proven at trial.

117.

As a result of the acts described above, Cloudera has suffered monetary damages and has suffered substantial and irreparable injury and is threatened with further substantial and irreparable injury for which there is no adequate remedy at law to compensate.  By reason of the foregoing, Cloudera also requires injunctive relief.  Unless injunctive relief is granted, Cloudera will be irreparably harmed in a manner not fully compensable by money damages.

118.

Databricks' actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences, entitling Plaintiffs to an award of punitive damages.

## COUNT III
## TORTIOUS INTEREFERENCE WITH CONTRACTUAL RELATIONS - NIETERS
*Against Defendant, Databricks*

119.

Cloudera repeats and realleges each and every allegation set forth in paragraphs 1 through 118 as if fully set forth herein.

120.

Cloudera has a valid contractual relationship with Nieters.

121.

Despite its knowledge of the terms the competitive restrictions under the Nieters PIIA, Databricks, as a Competitor, induced Nieters to breach his contract with Cloudera to recruit Doverspike, who was a current Cloudera employee.

122.

In doing so, Databricks acted improperly and without privilege, and purposely and maliciously with the intent to injure.

123.

As a direct and proximate result of Databricks' actions, Cloudera has suffered financial injury in an amount to be proven at trial.

124.

As a result of the acts described above, Cloudera has suffered monetary damages and has suffered substantial and irreparable injury and is threatened with further substantial and irreparable injury for which there is no adequate remedy at law to compensate.  By reason of the foregoing, Cloudera also requires injunctive relief.  Unless injunctive relief is granted, Cloudera will be irreparably harmed in a manner not fully compensable by money damages.

125.

Databricks' actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences, entitling Plaintiffs to an award of punitive damages.

**COUNT IV**
**Defend Trade Secrets Act (18 U.S.C. § 1832)**
*Against all Defendants*

126.

Cloudera repeats and realleges each and every allegation set forth in paragraphs 1 through 125 as if fully set forth herein.

127.

The Defend Trade Secrets Act of 2016 ("DTSA") forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1) (as amended).

128.

Under the DTSA, "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if, (A) the owner thereof has taken reasonable measures to keep such information secret, and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by,

another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3) (as amended).

129.

Under the DTSA, "misappropriation" means "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who: (i) used improper means to acquire knowledge of the trade secret; or (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was: (I) derived from or through a person who had used improper means to acquire the trade secret; (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or (iii) before a material change of the position of the person, knew or had reason to know that (I) the trade secret was a trade secret and (II) knowledge of the trade secret had been acquired by accident or mistake." 18 U.S.C. § 1839(5) (as amended).

130.

Under the DTSA, "improper means" "(A) includes theft, bribery,

misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and (B) does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6) (as amended).

### 131.

Doverspike misappropriated Cloudera's documents containing Cloudera's trade secrets for the benefit of Databricks when he emailed them from his Cloudera email to his personal email and copied them to a USB device.

### 132.

Doverspike has not returned the Cloudera trade secret information that he forwarded and copied for himself as he was leaving Cloudera for Databricks.

### 133.

The documents that Doverspike misappropriated contain, among other things, sensitive Cloudera customer sales documents, the identities of actual and prospective customer accounts, revenue spreadsheets, marketing plans, training materials, and strategic plans.

### 134.

Doverspike is unlawfully using and disclosing Cloudera's trade secret information in his new job at Databricks.

135.

The information contained in these documents constitute trade secrets related to a product or service used in, or intended for use in, interstate commerce.

136.

This information provides significant value to Cloudera and gives Cloudera a competitive advantage in its industry.

137.

This information derives independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

138.

If a competitor, such as Databricks, obtained this information, it could target Cloudera's current and prospective clients and, among other things, unfairly diminish Cloudera's market share.

139.

Cloudera took reasonable steps to keep this information secret, including by devoting substantial time and money in implementing and enforcing processes and procedures to protect such information.

140.

On information and belief, Doverspike disclosed Cloudera trade secret information to Databricks during the hiring process and/or during his employment with Databricks.

141.

On information and belief, Doverspike has continued to possess, access, and use Cloudera's trade secret information during his job duties at Cloudera and for the benefit of Cloudera.

142.

On information and belief, Databricks has intentionally interfered with Cloudera's existing and prospective business relationships using Cloudera trade secret information.

143.

As a result of the Defendants' wrongdoing, Cloudera has suffered monetary damages and has suffered substantial and irreparable injury and is threatened with further substantial and irreparable injury due to the loss and use by Defendants of its trade secrets, for which there is no adequate remedy at law to compensate.

144.

Databricks used Cloudera trade secret information to interfere with Cloudera's actual and prospective economic advantage. Cloudera was damaged as a result of Databricks' interference with Cloudera's substantial economic opportunities.

### COUNT V
### Georgia Trade Secrets Act (O.C.G.A. § 10-1-760)
*Against all Defendants*

145.

Cloudera repeats and realleges each and every allegation set forth in paragraphs 1 through 144 as if fully set forth herein.

146.

The Georgia Trade Secrets Act of 1990, O.C.G.A. § 10-1-760, et seq. ("GTSA"), prohibits any person from misappropriating trade secrets by improper means, e.g., theft, bribery, breach of contract or other duty, including inducement of such breach.

147.

The "actual or threatened misappropriation [of a trade secret] may be enjoined." O.C.G.A. § 10-1-762. In addition to or in lieu of injunctive relief, a person

is entitled to recover damages for trade secret misappropriation. O.C.G.A. § 10-1-763.

148.

By virtue of his employment with, and performance of responsibilities for, Cloudera, Doverspike was given access to, improperly took, and now possesses trade secrets belonging to Cloudera which, on information and belief, he is using in the course of his employment at Databricks.

149.

Doverspike's retention and actual and/or threatened use and disclosure of Cloudera's trade secrets at Databricks constitute misappropriation of Cloudera's trade secrets in violation of the GTSA.

150.

Databricks has intentionally interfered with Cloudera's existing and prospective business relationships using Cloudera's trade secret information.

151.

As a result of the Defendants' wrongdoing, Cloudera has suffered monetary damages and has suffered substantial and irreparable injury and is threatened with further substantial and irreparable injury due to the loss and use by Doverspike of its trade secrets, for which there is no adequate remedy at law to compensate.

152.

By reason of the foregoing, Cloudera requires injunctive relief.  Unless injunctive relief is granted, Cloudera will be irreparably harmed in a manner not fully compensable by money damages.  In addition, Cloudera has been damaged in an amount to be determined at trial.

153.

Defendants' misappropriation of Cloudera's trade secrets is willful, wanton, reckless and malicious, entitling Cloudera to an award of exemplary damages in an amount authorized by O.C.G.A. § 10-1-763(b).

154.

Pursuant to O.C.G.A. § 10-1-764, Cloudera is entitled to an award of its attorneys' fees and costs incurred in this action because Defendants have willfully and maliciously misappropriated the trade secrets of Cloudera, knowing them to be trade secrets.

**COUNT VI**
**Violation of Computer Fraud and Abuse Act**
**(18 U.S.C. § 1030)**
*Against Defendant Doverspike*

155.

Cloudera repeats and realleges each and every allegation set forth in paragraphs 1 through 154 as if fully set forth herein.

156.

Cloudera's computers are computers used in and affecting interstate commerce and communication and are therefore "protected computers" under 18 U.S.C. § 1030(e)(2).

157.

In violation of the CFAA, including at least 18 U.S.C. § 1030 (a)(2)(c) and a(4), Doverspike knowingly and with intent to defraud, exceed his authorized access to Cloudera's protected computers by downloading, copying and transferring information from Cloudera's protected computers and systems for the improper purpose of misappropriating Cloudera confidential information and trade secrets and usurping Cloudera's business opportunities for the benefit of Databricks.

158.

Doverspike knowingly and with intent to defraud, accessed protected Cloudera computers and systems within this judicial district without authorization, and/or exceeded authorized access, and by means of such conduct furthered the intended fraud and obtained a thing of value, including Cloudera's trade secrets.

159.

On information and belief, Doverspike purposefully and without authorization exfiltrated the aforementioned confidential business data and trade secrets from Cloudera's computers and systems and transmitted the information to a third-party data repository located outside Cloudera's network.

160.

By intentionally accessing Cloudera's protected computers without authorization and exceeding the scope of authorized access to violate, Doverspike violated the CFAA.

161.

As a direct and proximate cause of Doverspike's unlawful conduct, Cloudera has incurred costs and suffered damages in excess of $5,000.00 in fees and costs and in expenses associated with responding to the offense and conducting a forensic investigation.

162.

Doverspike's conduct caused Plaintiff loss and damage to its computer systems within the meaning of 18 U.S.C. § 1030(e)(8) & (11). As a direct and proximate cause of Doverspike's unlawful conduct, Cloudera has suffered and will continue to suffer financial losses, irreparable harm, loss of the confidentiality of its

trade secrets and confidential information, and other continuing harms. The losses and harm to Cloudera are ongoing and cannot be remedied by damages alone.

## COUNT VII
### Violation of the Georgia Computer Systems Protection Act
### *Against Defendant Doverspike*

163.

Cloudera repeats and realleges each and every allegation set forth in paragraphs 1 through 162 as if fully set forth herein.

164.

Cloudera's computers and computer systems constitute a "computer" as that term is defined by O.C.G.A. § 16-9-92.

165.

Cloudera's computers, computer terminals, servers, and related devices and software constitute a "computer network" as that term is defined by O.C.G.A. § 16-9-92.

166.

Doverspike's use of Cloudera's computers and computer networks to misappropriatehighly confidential and proprietary information and trade secrets and other property of Cloudera was "without authority," as that term is defined by O.C.G.A. § 16-9-92.

167.

Doverspike used Cloudera's computers and systems with knowledge that such use was without authority, and with the intention of taking or appropriating the property of Cloudera, in violation of O.C.G.A. § 16-9-93(a)(1).

168.

Doverspike used Cloudera's computers and systems with knowledge that such use was without authority, and with the intention of obtaining Cloudera's property by deceitful means and/or artful practice, in violation of O.C.G.A. § 16-9-93(a)(2).

169.

Doverspike used Cloudera's computers and systems with knowledge that such use was without authority, and with the intention of converting Cloudera's property, including its trade secrets, to his own use at Databricks in violation of known legal obligations to make a specified application or disposition of Cloudera's property, in violation of O.C.G.A. § 16-9-93(a)(3).

170.

Cloudera has been injured by reason of Doverspike's violations of O.C.G.A. § 16-9-93(a)(1), (2), and (3), and is entitled to an award of compensatory damages against Defendant in an amount to be determined at trial.

171.

Doverspike's violations of O.C.G.A. § 16-9-93(a)(1), (2), and (3) exhibit willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences, such that Cloudera is entitled to punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.      That judgment be entered in favor of Cloudera and against Doverspike and Databricks on all Counts of this Complaint;

2.      That Doverspike be ordered to comply with the terms of the PIIA;

3.      That Doverspike be ordered to comply with the terms of the Offer Letter;

4.      That Doverspike be temporarily, preliminarily, and permanently enjoined and restrained from, individually or acting in concert with any other person or entity, directly or indirectly, utilizing, divulging, and/or relying on Cloudera's confidential proprietary, or trade secret information or trade secrets, whether in the course of his employment with Databricks or in any other personal or professional capacity;

5.      That Databricks be temporarily, preliminarily, and permanently

enjoined and restrained from, individually or acting in concert with any other person or entity, directly or indirectly, utilizing, divulging, and/or relying on Cloudera's confidential, proprietary, or trade secret information;

6.    For an order requiring Defendants to return to Cloudera all of its confidential, proprietary, and trade secret information, and any other property they have misappropriated;

7.    That Doverspike, for a period of 12 months from the end of his employment with Cloudera, be temporarily, preliminarily and permanently enjoined from directly or indirectly soliciting, contacting, or otherwise supporting (a) customer accounts that he was responsible for at Cloudera during his last 24 months of employment there and (b) customer accounts identified in Cloudera/Hortonworks confidential, proprietary, or trade secret documents that Doverspike improperly took and maintained possession of post-employment at Cloudera.

8.    That Databricks be temporarily, preliminarily, and permanently enjoined and restrained from, individually or acting in concert with any other person or entity, directly or indirectly seeking to recruit employees from Cloudera using former Cloudera/Hortonworks employees in violation of Cloudera/Hortonworks agreements;

9.    For an award of compensatory damages in an amount to be proven at

trial;

10.    For an award of restitution in an amount to be proven at trial;

11.    For an award of the value of any and all unjust enrichment received by Defendants as a result of their conduct as described in this Complaint, including the disgorgement of any revenues and profits;

12.    For an award of royalties as permitted by statute;

13.    For an accounting to validate and confirm the amount of all unjust enrichment received by Defendants as a result of their conduct as described in this Complaint;

14.    For an award of punitive or exemplary damages;

15.    For its reasonable attorneys' fees;

16.    For prejudgment interest on all amounts claimed;

17.    For costs of suit incurred herein; and

18.    For such other and further relief, including any statutory relief, as the Court deems just, proper and equitable under the circumstances.

Dated:     January 8, 2021              Respectfully Submitted,

                                        BERMAN FINK VAN HORN P.C.

                                        By: */s/ Benjamin I. Fink*
                                        _____
                                            Benjamin I. Fink
                                            Georgia Bar No: 261090
                                            BFink@bfvlaw.com
                                            3475 Piedmont Road, Suite 1100
                                            Atlanta, Georgia 30305
                                            Telephone:     +1 404 261 7711
                                            Fascimile:     +1 404 233 1943

                                            Amy K. Van Zant *(to be admitted
                                            pro hac vice*)
                                            avanzant@orrick.com
                                            Michael D. Weil *(to be admitted pro
                                            hac vice*)
                                            mweil@orrick.com
                                            Orrick Herrington & Sutcliffe LLP
                                            1000 Marsh Road
                                            Menlo Park, CA  94025-1015
                                            Telephone: +1 650 614 7400
                                            Facsimile:  +1 650 614 7401

                                            Attorneys for Plaintiff
                                            Cloudera, Inc.

## <u>CERTIFICATE OF COMPLIANCE WITH<br>LOCAL RULE 7.1D AND 5.1B</u>

Pursuant to Local Rule 7.1D and 5.1B, the undersigned counsel hereby certifies that the foregoing document complies with the Local Rule's requirements as to font in that it has been prepared in Times New Roman, 14 point.

This 8th day of January, 2021.

BERMAN FINK VAN HORN P.C.

By: *<u>/s/ Benjamin I. Fink</u>*
      Benjamin I. Fink
      Georgia Bar No: 261090
      BFink@bfvlaw.com
      3475 Piedmont Road, Suite 1100
      Atlanta, Georgia 30305
      Telephone:    +1 404 261 7711
      Fascimile:    +1 404 233 1943

      Amy K. Van Zant *(to be admitted pro hac vice)*
      avanzant@orrick.com
      Michael D. Weil *(to be admitted pro hac vice)*
      mweil@orrick.com
      Orrick Herrington & Sutcliffe LLP
      1000 Marsh Road
      Menlo Park, CA 94025-1015
      Telephone:    +1 650 614 7400
      Facsimile:    +1 650 614 7401

      Attorneys for Plaintiff
      Cloudera, Inc.