IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CLOUDERA, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:21-CV-00108-ELR |
| | * | |
| DATABRICKS, INC. and | * | |
| RICHARD DOVERSPIKE, | * | |
| | * | |
| Defendants. | * | |
| | * | |

_____

**O R D E R**
_____

There are several matters pending before the Court. The Court's rulings and conclusions are set forth below.

**I.   Background**

This case stems from allegations that an employee misappropriated trade secrets from his employer before leaving to work for a competitor. See generally Am. Compl. [Doc. 49]. Plaintiff Cloudera, Inc. ("Cloudera") is a software company that provides a platform for data engineering, warehousing, and analytics. Id. ¶ 12. Defendant Richard Doverspike became an employee of Cloudera when it merged with his previous employer, Hortonworks, Inc. ("Hortonworks") in January 2019. Id. ¶ 2. As part of the merger, Hortonworks assigned all of its employee agreements

to Cloudera, including its agreement with Doverspike. Id. Thus, from January 2019 until he resigned on November 30, 2020, Defendant Doverspike worked as a Cloudera Enterprise Account Executive for the southeastern region of the United States. Id. ¶ 21. Defendant Databricks, Inc. ("Databricks"), a direct competitor of Cloudera, is Defendant Doverspike's current employer. Id. ¶ 88.

As part of his employment with Cloudera, Defendant Doverspike signed an Offer of Employment letter ("Offer Letter"), which included a Proprietary Information and Inventions Agreement & Non-Compete Agreement ("PIIA") and Mutual Arbitration Agreement ("MAA"). Id. ¶ 32. The PIIA includes non-compete, non-disclosure, and non-solicitation covenants. Id. ¶¶ 33–40. Pursuant to these provisions, Defendant Doverspike agreed that—for twelve (12) months following the termination of his employment with Plaintiff—he would not "knowingly participate in soliciting or communicating with any customer in pursuit of a competing line of business if [he] had a business-related contact with that customer or received Proprietary Information about that customer in up to the last two (2) years of [his] employment[.]" Id. ¶ 36. He also made similar agreements regarding solicitation and communication with Plaintiff's employees and suppliers. Id. ¶¶ 37–38.

Additionally, the non-disclosure clause provided that Defendant Doverspike would not disclose or use any of Plaintiff's Proprietary Information "except within

the scope of [his] employment[.]" Id. ¶ 40. By that same clause, Defendant Doverspike also agreed that he would promptly return all items containing or embodying Proprietary Information upon the termination of his employment with Plaintiff. Id. Further, it is undisputed that the MAA provided that any disputes arising out of, relating to, or resulting from Doverspike's employment or the termination of his employment would be subject to binding arbitration in Santa Clara County, California. Id. ¶¶ 45–47.

Defendant Databricks offers a competing cloud-based platform for processing and analyzing data. Id. ¶¶ 87–88. On November 20, 2020, Databricks offered Doverspike a position as an Enterprise Account Executive. See Declaration of Richard Doverspike ¶¶ 28, 30 ("Doverspike Decl.") [Doc. 21-1]. Doverspike accepted Databricks' offer the same day and resigned from Cloudera ten (10) days later, beginning his employment with Databricks on December 14, 2020. Id. ¶¶ 28, 31, 40.

In its Amended Complaint and Motion for Temporary Restraining Order ("TRO"), Plaintiff accuses Defendant Doverspike of misappropriating its trade secrets and violating its PIIA. See Am. Compl. ¶¶ 60–73; [see also Doc 2-1 at 5–9]. Specifically, Plaintiff claims that from October 2020 through November 30, 2020, Defendant Doverspike sent confidential and trade secret information to his personal email account. Am. Compl. ¶¶ 60, 65–71. Plaintiff further claims that on the day

Doverspike resigned, he plugged a USB drive into his Cloudera computer and copied files. Id. ¶ 61. According to the Amended Complaint, Plaintiff learned of the alleged emailing and copying of its files when it conducted a forensic analysis following Doverspike's return of his Cloudera-issued laptop. Id. ¶¶ 59–61.

As a result of these actions, Plaintiff initiated this suit on January 8, 2021, alleging seven (7) counts, as provided below.

| Count | Claim | Alleged Against Defendant(s) |
|---|---|---|
| I | Breach of Contract | Defendant Doverspike |
| II | Tortious Interference with Contractual Relations: Richard Doverspike and Others | Defendant Databricks |
| III | Tortious Interference with Contractual Relations: John Nieters and Others | Defendant Databricks |
| IV | Violation of Defend Trade Secrets Act | Defendant Doverspike and Defendant Databricks |
| V | Violation of Georgia Trade Secrets Act | Defendant Doverspike and Defendant Databricks |
| VI | Violation of Computer Fraud and Abuse Act | Defendant Doverspike |
| VII | Violation of Georgia Computer Systems Protection Act | Defendant Doverspike |

Id. ¶¶ 150–235.

Along with its Complaint, Plaintiff filed a motion for TRO [Doc. 2] and a motion for expedited discovery [Doc. 3]. In response, Defendants Doverspike filed a motion seeking to enforce the arbitration agreement contained in his Cloudera Offer Letter. [See Doc. 20]. Defendant Databricks, in a separate motion, argues that if the Court compels arbitration of Plaintiff's claims against Defendant Doverspike, the Court should stay the remainder of Plaintiff's claims against Databricks pending the outcome of arbitration or, alternatively, transfer the claims to the Northern District of California for the convenience of the Parties and witnesses. [Doc. 26].

The Court heard oral argument from the Parties on the four (4) pending motions on January 29, 2021.[1] [Docs. 35, 40]. Having been fully briefed and with the benefit of oral argument, the motions are now ripe for the Court's review. The Court begins with Defendant Doverspike's "Rule 7.2 Emergency Motion to Compel Arbitration and Stay." [Doc. 20].

## II. Defendant Doverspike's Rule 7.2 Emergency Motion to Compel Arbitration and Stay [Doc. 20]

Defendant Doverspike contends that the MAA contained in his Cloudera Offer Letter governs the claims Plaintiff brings against him and must be enforced. [Docs. 20-1 at 1–2, 15; 20-2 at 10]. Accordingly, Defendant Doverspike requests

---

[1] The Court scheduled a hearing on Plaintiff's motions for January 22, 2021 [Doc. 8]; however, the Court rescheduled the hearing for January 29, 2021. [Doc. 35]. The Court also granted Defendants' request to hear oral argument on their motions concurrently at the aforementioned hearing. [See Docs. 35, 40].

that the Court compel arbitration and stay these proceedings until arbitration is complete.[2]

Plaintiff does not contest the validity of the MAA and states it does not oppose arbitration of its claims against Defendant Doverspike. [Doc. 39]. However, Plaintiff requests that the Court defer arbitration until ruling upon Plaintiff's motions for TRO and expedited discovery. [Id. at 1, 6–8]. The Court sets out the relevant legal standard before addressing the Parties' respective positions.

### A.  Legal Standard

As a preliminary matter, the arbitration agreement in this case is governed by the Federal Arbitration Act ("FAA"). See Kong v. Allied Prof'l Ins. Co., 750 F.3d 1295, 1303 (11th Cir. 2014) (citing 9 U.S.C. §§ 1-2) ("The FAA applies to all contracts involving interstate commerce."); Wilson v. O'Charley's, LLC, Civil Action File No. 1:14-CV-1983-TWT, 2014 WL 5716295, at *1 (N.D. Ga. Nov. 4, 2014) ("[T]he FAA applies generally to all employment contracts except those

---

[2] In relevant part, the MAA states:
> [i]n consideration of your employment with [Plaintiff], its promise to arbitrate all employment related disputes, and your receipt of the compensation, pay raises, and other benefits paid to you by [Plaintiff], at present and in the future, you agree that any and all controversies, claims, or disputes with anyone (including [Plaintiff] and any employee, officer, director, or benefit plan of [Plaintiff]), arising out of, relating to, or resulting from your employment with us or the termination of your employment with us, including any breach of this agreement, shall be subject to binding arbitration under the arbitration rules set forth in California code of civil procedure section 1280 through 1294.2, including section 1281.8[], and pursuant to California law.

[Doc. 20-2 at 10].

involving 'transportation workers[.]'") (quoting Circuit City v. Adams, 532 U.S. 105, 119 (2001)).  Federal law and the FAA provide a strong presumption in favor of arbitration, as codified in the relevant statute:

> an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Additionally, sections 3 and 4 of the FAA mandate that federal district courts shall stay proceedings and "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).  Even if the result is piecemeal litigation, courts must "rigorously enforce agreements to arbitrate."  Id. at 221.

With this guidance in mind, when resolving a motion to compel arbitration, the Court must determine whether: "(1) there is a valid written agreement to arbitrate; (2) the issue sought to be arbitrated is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims." Wallace v. Rick Case Auto, Inc., 979 F. Supp. 2d 1343, 1347 (N.D. Ga. 2013) (alteration adopted and internal quotation marks omitted) (citing Lomax v. Woodmen of the World Life Ins. Soc'y, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002)).  However, the Eleventh Circuit instructs that an arbitration agreement may properly reserve the determination of the "gateway question" of arbitrability to the arbitrator through a "delegation provision," which is "an additional, antecedent

7

agreement that is severable from the remainder of the arbitration agreement." Given v. M & T Bank Corp. (In re Checking Account Overdraft Litig.), 674 F.3d 1252, 1255 (11th Cir. 2012) (citing Rent-A-Center West, Inc. v. Jackson, 561 U.S. 63, 70 (2010)). Thus, in Given, the Eleventh Circuit concluded that delegation provisions should be enforced where there is "'clear and unmistakable' evidence that the parties manifested their intent to arbitrate" the gateway question of arbitrability. See id.

Moreover, the U.S. Supreme Court recently reiterated that "when the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possess no power to decide the arbitrability issue." See Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019); see also CPR-Cell Phone Repair Franchise Sys., Inc. v. Nayrami, 896 F. Supp. 2d 1233, 1241 (N.D. Ga. 2012) ("[O]nce the district court finds clear and unmistakable evidence of an intent to arbitrate gateway questions, the district court is required to compel arbitration.").

**B.  Discussion**

Having addressed the relevant legal standard, the Court turns to the Parties' positions on Doverspike's motion to compel arbitration and stay. As mentioned above, the Parties do not dispute that a valid arbitration agreement exists (in the form of the MAA). [See Docs. 47 at 1; 39 at 1]. Thus, the Court must first determine

whether the MAA includes a delegation provision which demonstrates a clear and unmistakable intent to delegate arbitrability questions.

According to Doverspike, the MAA contains a delegation provision, because it states that "[a]ny arbitration will be administered by [Judicial Arbitration and Mediation Services, Inc. ("JAMS")], pursuant to its employment arbitration & procedures (JAMS rules)." [Doc. 20-2 at 10]. JAMS Rule 11(b) provides:

> [j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

See JAMS Employment Arbitration Rules & Procedures, R. 11(b). Thus, Defendant Doverspike argues that, by incorporating the JAMS rules into the MAA, Plaintiff and Doverspike clearly and unmistakably agreed that an arbitrator should determine the arbitrability of their instant disputes. [Docs. 20-1 at 14; 47 at 10–11].[3]

Upon review, the Court agrees. Previous decisions in the Eleventh Circuit have held that incorporating the rules of an arbitration tribunal (such as JAMS) into an agreement constitutes a clear and unmistakable intent to delegate. See JPay, Inc. v. Kobel, 904 F.3d 923, 937 (11th Cir. 2018) ("Incorporating relevant [arbitration tribunal] rules . . . is a clear an unmistakable indication of the parties' intent to decide

---

[3] Plaintiff does not contest that the MAA contains a valid delegation provision.

not just whether the arbitration clause is valid, but whether it applies."); see also Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship., 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the [arbitration tribunal] Rules . . . into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid").  Accordingly, the Court finds Plaintiff and Defendant Doverspike demonstrated a clear and unmistakable intent to delegate arbitrability questions through the MAA's incorporation of the JAMS rules.[4]  Because the MAA includes a valid delegation provision, the Court enforces the arbitration agreement and reserves gateway questions of arbitrability to the arbitrator.[5]

Having determined that arbitration is appropriate, the Court now turns to the remaining issue of whether it should delay arbitration until ruling upon Plaintiff's motions for TRO and expedited discovery, as Plaintiff contends.  [See Doc. 39 at 6–8].  In support, Plaintiff maintains the MAA contains a carve-out permitting it to seek a TRO and other interim injunctive relief before arbitrating the merits of its claims.  [See id.]  According to Plaintiff, this carve-out is contained in California

---

[4] Having found a clear and unmistakable delegation provision in the MAA, the Court declines to reach Doverspike's argument that the Offer Letter provides an additional delegation provision.

[5] Even if the MAA or Offer Letter did not include a delegation provision, the Court finds the MAA is valid and that Plaintiff's claims against Doverspike all arise from or relate to Doverspike's employment and termination of employment with Cloudera, and therefore, fall within the scope of the MAA.  See Hortonworks, Inc. v. Daher, No. 2:18-CV-516, 2019 WL 926027, at *2–3 (S.D. Ohio Feb. 26, 2019) (holding that similar claims for trade secret misappropriation and breach of contract were within the scope of an identical Mutual Arbitration Agreement).

Code of Civil Procedure § 1281.8, which the MAA incorporates. [See id. at 7]. In relevant part, California Code of Civil Procedure § 1281.8(b) states:

> [a] party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled be rendered ineffectual without provisional relief.

CAL. CIV. PROC. § 1281.8. Because the definition of a "provisional remedy" includes preliminary injunctions and temporary restraining orders, Plaintiff argues that it has a right to seek injunctive relief prior to arbitration. Id. § 1281.8(a)(3); [Doc. 39 at 8]. On that basis, Plaintiff asserts that the Court must address its pending motions before compelling arbitration. [Doc. 39 at 8].

Defendant Doverspike disagrees and makes several arguments in favor of compelling arbitration and staying these proceedings prior to adjudication of Plaintiff's pending motions. [See Doc. 47]. Most persuasively, Defendant Doverspike points to the delegation provision, arguing that the arbitrator is the proper party to interpret the MAA and determine whether it contains the alleged carve-out Plaintiff seeks to propound. [See id. at 12–15].

Upon review, the Court agrees with Defendant Doverspike and finds the delegation provision in the MAA dictates that gateway questions—including those regarding the "interpretation or scope of the agreement"—are to be decided by the arbitrator instead of this Court. See JAMS Employment Arbitration Rules &

11

Procedures, R. 11(b). Whether the incorporation of California Code of Civil Procedure § 1281.8(b) indeed creates a carve-out, as Plaintiff claims, is question concerning the scope of the MAA. See Cellairis Franchise, Inc. v. Duarte, No. CV 2:15-CV-00101-WCO, 2015 WL 11422299, at *6 (N.D. Ga. July 20, 2015) ("The scope of a carve-out provision constitutes an arbitrability determination. . . . Because the parties expressly delegated that authority to the arbitrator and because the parties' agreement incorporates the [arbitration tribunal's] rules, the court is precluded from determining whether plaintiffs may bring the claims presented in their complaint in court."). Therefore, the Court reserves Plaintiff's question regarding the carve-out provision to the arbitrator and stays these proceedings pending the outcome of arbitration. See id. ("The court can define the scope of an arbitration clause only if the court has the authority to make arbitrability determinations.").

Accordingly, the Court grants Defendant Doverspike's "Rule 7.2 Emergency Motion to Compel Arbitration and Stay Proceedings." [Doc. 20].

### III. Defendant Databricks' "Emergency Motion to (1) Stay Pending Arbitration, or in the Alternative, (2) to Transfer this Action to the Northern District of California" [Doc. 26]

The Court now turns to Defendant Databrick's motion. In light of the Court's ruling compelling arbitration and staying proceedings as to Plaintiff's claims against Defendant Doverspike, only Plaintiff's four (4) Counts against Defendant

Databricks remain: Count II—Tortious Interference with Contractual Relations–Doverspike; Count III—Tortious Interference with Contractual Relations—Nieters; Count IV—Violation of Defend Trade Secrets Act; and Count V—Violation of Georgia Trade Secrets Act. See generally Am. Compl. In its motion, Defendant Databricks argues the Court should stay these claims pending Plaintiff's arbitration with Defendant Doverspike because they are "intimately intertwined" with Plaintiff's claims against Doverspike. [See Doc. 26-1 at 3–8].

Alternatively, Defendant Databricks' motion requests that the Court transfer Plaintiff's claims against Defendant Databricks to the Northern District of California for the convenience of the Parties and witnesses. [Id. at 8–14]. Notably, Plaintiff does not oppose transfer of its claims against Databricks to the Northern District of California, stating that "[a]ssuming the Doverspike claims proceed to arbitration, Cloudera now prefers transfer to the Northern District of California[.]" [Doc. 46 at 12]. However, Plaintiff opposes Databricks' motion regarding the *timing* of such transfer. [Id.] At the January 29, 2021 hearing, Defendant Databricks clarified that it now only seeks the transfer of its claims to the Northern District of California, so the transferee court may determine its motion to stay pending arbitration. Accordingly, the Court sets out the relevant legal standard for transfer before considering the Parties' arguments.

A.  **Legal Standard**

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district where it might have been brought "[f]or the convenience of parties and witnesses [and] in the interest of justice." Thus, the district court must first determine whether a plaintiff could have filed its lawsuit in the proposed transferee forum. See id. Next, the court evaluates the Section 1404(a) factors. Id. The three general criteria for determining whether to transfer are (1) the convenience for the parties, (2) the convenience for the witnesses, and (3) the interests of justice. See Smith v. Dollar Tree Stores, Inc., No. 1:11-CV-02299-SCJ, 2012 WL 12343344, at *2 (N.D. Ga. May 10, 2012). However, courts in the Eleventh Circuit may also consider the following "Manuel factors" in deciding a Section 1404(a) motion to transfer:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

See Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

The moving party bears the burden to establish the Section 1404(a) factors weigh in favor of transfer. Accord Huntley v. Chi. Bd. of Options Exch., 132 F. Supp. 3d 1370, 1372 (N.D. Ga. 2015). Lastly, the decision to transfer a case under

Section 1404(a) rests within the Court's sound discretion. See Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 654–55 (11th Cir. 1993) (reviewing district court's transfer of venue for clear abuse of discretion).

**B.    Discussion**

Having set out the relevant transfer standard, the Court first determines whether transfer is appropriate before turning to Plaintiff's argument regarding the timing of any potential transfer. Defendant Databricks argues that transfer to the Northern District of California is proper pursuant to Section 1404(a) because (1) Plaintiff's claims could have initially been brought there and (2) the Manuel factors weigh in favor of transfer. [See Doc. 26]. As stated previously, Plaintiff agrees that transfer of its claims against Databricks to the Northern District of California is proper (even preferable). [Doc. 46 at 4–12]. Thus, the Court evaluates the two (2)-pronged test for transfer below.

First, the Court must first determine whether Plaintiff could have filed its claims against Databricks in the proposed transferee forum. See 28 U.S.C. § 1404(a). "Pursuant to 28 U.S.C. § 1391, a corporation may be sued in any judicial district in which it is incorporated, licensed to do business, or is doing business; such judicial district is regarded as the residence of such corporation for venue purposes." Smith, 2012 WL 12343344, at *2. Therefore, venue is proper in the district where a corporation is headquartered. Rogers v. Civil Air Patrol, 129 F. Supp. 2d 1334,

1337 (M.D. Ala. 2001). Defendant Databricks' headquarters are located in the Northern District of California [Doc. 26 at 9]; thus, the claims against it could have been brought there initially, satisfying the first factor of the two (2)-prong transfer test.

To decide the second prong of the transfer test, the Court evaluates whether the convenience of the Parties and interests of justice weigh in favor of transfer. See Smith, 2012 WL 12343344, at *2. Here, the Court agrees with the Parties that the Northern District of California is the more convenient forum for the Parties and witnesses. In particular, both Cloudera and Databricks' headquarters are located within the Northern District of California. [Docs. 26-1 at 10; 46 at 6]. Thus, the Parties assert that many of their witnesses and evidence are located in or near California, including: the Databricks employees with whom Doverspike interviewed; employees of both companies' information technology departments; and Plaintiff's forensic expert, Andrew Crain, who is based in Washington State. [Docs. 26-1 at 10–11; 46 at 6–7]. Additionally, both Plaintiff and Databricks note that Defendant Doverspike has already initiated arbitration in Santa Clara County, California. [See Docs. 26-1 at 10; 46 at 7 n.8]. Therefore, overlapping evidence and witnesses will already be in California. [Id.] Thus, upon review, the Court finds transfer of Plaintiff's claims against Databricks is in the interest of justice and will serve the convenience of Parties and witnesses.

Having concluded that transfer of Plaintiff's claims against Databricks is appropriate, the Court considers Plaintiff's argument that transfer should not occur until the undersigned rules on its pending motions for TRO and expedited discovery. [Doc. 46 at 3–4]. Again, Plaintiff contends that unless the Court immediately issues a TRO, it will suffer irreparable harm from the risk of Defendants' use of its trade secrets, or that essential forensic evidence might be lost or destroyed. [Id.]

However, as Defendant Databricks points out, courts in this circuit regularly leave resolution of a TRO or preliminary injunction for the transferee court. [See Doc. 48 at 12–15]; see also, e.g., Experience Hendrix, L.L.C. v. Tiger Paw Distributors, LLC, No. 1:16-CV-642-SCJ, 2016 WL 8938517, at *3 (N.D. Ga. May 10, 2016) (transferring the case to the proper venue and deferring ruling on a motion for preliminary injunction); Stupka v. PSS World Medical, Inc., No. 1:09-CV-2715-TCB, 2009 WL 10670708, at *8 (N.D. Ga. Nov. 9, 2009) (transferring a case and "[leaving] resolution of Plaintiff's motion for a temporary restraining order and motion or interlocutory injunction . . . for the [transferee court's] consideration"). For example, in Woo v. Nike, Inc., the district court resolved a defendant's motion to transfer while the plaintiff's motion for injunctive relief was simultaneously pending before the court. See Case. No. 1:10-CV-1018-RWS, 2010 WL 1565526, at *1 (N.D. Ga. Apr. 19, 2010). After concluding that transfer was appropriate,

17

Judge Story "deferred [the motion for injunctive relief] for ruling after transfer." Id. at *2–3. The Court finds this authority persuasive and follows the same approach.

Thus, having found transfer appropriate pursuant to 28 U.S.C. § 1404(a), the Court defers Plaintiff's pending motion for TRO [Doc. 2] and motion for expedited discovery [Doc. 3] for ruling by the United States District Court for the Northern District of California. Accordingly, the Court grants Databricks' motion to transfer and defers ruling on its motion to stay pending arbitration for after transfer. [Doc. 26].

## VI. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant Doverspike's "Rule 7.2 Emergency Motion to Compel Arbitration and Stay" [Doc. 20] and **STAYS** Plaintiff's claims against Defendant Doverspike pending the outcome of arbitration. Additionally, the Court **GRANTS IN PART** Defendant Databricks' "Emergency Motion to (1) Stay Pending Arbitration, or in the Alternative, (2) to Transfer this Action to the Northern District of California" to the extent the Court **GRANTS** Databricks' motion to transfer. [Doc. 26]. The Court defers ruling on Defendant Databricks' motion to stay pending arbitration [Doc. 26] for the transferee court. Lastly, the Court **DIRECTS** the Clerk to transfer Plaintiff's claims against Defendant Databricks to the United States District Court for the District of Northern California.

**SO ORDERED**, this 17th day of February, 2021.

                                              */s/ Eleanor L. Ross*
                                              Eleanor L. Ross
                                              United States District Judge
                                              Northern District of Georgia